BART M. DAVIS
UNITED STATES ATTORNEY
JAMES P. SCHAEFER
ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF IDAHO
WASHINGTON GROUP PLAZA IV
800 EAST PARK BOULEVARD, SUITE 600
BOISE, IDAHO  83712
TELEPHONE:  (208) 334-1211
FACSIMILE:   (208) 334-1414

Attorneys for United States of America

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiffs,<br><br>     v.<br><br>CHERIE R. DILLON and DENTAL HEALTHCARE WITH HEART, P.C., (successor in interest to DENTAL HEALTHCARE WITH HEART, PLLC),<br><br>          Defendants. | Case No.<br><br>**COMPLAINT** |

Plaintiff United States of America brings this civil complaint for damages and civil penalties under the False Claims Act, as amended, 31 U.S.C. §§ 3729-3733, and alleges as follows:

**NATURE OF THIS ACTION**

1.     This is an action under the False Claims Act alleging that from January 1, 2010 through January 31, 2013, Defendants Cherie R. Dillon ("Dillon") and Dental Healthcare With Heart, PLLC ("DHWH") knowingly submitted or caused to be submitted false or fraudulent Medicaid claims to the United States of America and the State of Idaho through the Idaho

COMPLAINT - 1

Medicaid program.  The Medicaid claims that Defendants submitted during this period were false or fraudulent because the claims sought reimbursement for dental procedures that were: (a) not performed; (b) performed by Dillon, a dental hygienist, when they can only lawfully be performed by a dentist; (c) performed by Dillon without the requisite supervision of a dentist; (d) not performed by the person indicated in the claim; and (e) performed by contract dentists proceeding under Dillon's misrepresentation that a dentist had seen the patient and planned their treatment.  In addition, all claims submitted by DHWH were false or fraudulent because DHWH was owned by a non-dentist (*i.e.*, Dillon) in violation of Idaho law.

2.      Dillon used the credentials (*i.e.*, the signature stamp, license number, National Provider Identifier number, etc.) of Dr. Theodore Fricke, DDS, to disguise that:  (a) Dillon, a dental hygienist, was unlawfully performing dental procedures that can only lawfully be performed by a dentist; (b) Defendants were improperly billing for dental procedures that were not performed under the requisite supervision; (c) procedures were not performed by the person identified on the claim; and (d) DHWH was owned by a non-dentist in violation of Idaho law. Dillon's fraudulent use of the dentist's credentials created the false impression that DHWH and Dillon were operating and billing appropriately.

3.      The Idaho Medicaid program would not have paid the claims that Defendants submitted or caused to be submitted had it known that the claims were for dental procedures that were: (a) not performed; (b) performed by Dillon, a dental hygienist, when they can only lawfully be performed by a dentist; (c) performed by Dillon without the requisite supervision of a dentist; (d) not performed by the person indicated in the claim; and (e)  performed by contract dentists proceeding under Dillon's misrepresentation that a dentist had seen the patient and planned their treatment.  In addition, the Idaho Medicaid program would not have paid the

COMPLAINT - 2

claims that Defendants submitted or caused to be submitted had it known that DHWH was

owned by a non-dentist in violation of Idaho law.

4.      Defendants, by knowingly submitting, or causing to be submitted, false or

fraudulent claims for payment, violated the False Claims Act, 31 U.S.C. §§ 3729-3733.  As a

result of their fraudulent conduct, Defendants damaged Plaintiff United States of America and

the State of Idaho.

## PARTIES

5.      Plaintiff United States of America, acting through the United States Department

of Health and Human Services ("HHS") and its agency, the Centers for Medicare and Medicaid

Services ("CMS"), administers Grants to States for Medical Assistance Programs pursuant to

Title XIX of the Social Security Act, 42 U.S.C. § 1396 ("Medicaid"), and provides federal

funding for the state-Medicaid programs.

6.      At all times relevant to this Complaint, Dillon resided and worked in Idaho.  She

obtained her dental hygienist license in the State of Idaho in January 1985 and voluntarily

surrendered her license in March 2015.  She practiced as a licensed dental hygienist in Idaho

through at least January 2013.  She has never been licensed as a dentist.

7.      DHWH was a dental professional limited liability company located in the City of

Payette, Payette County, Idaho.  From 2005 through January 2013, DHWH provided dental

services as a Medicaid "provider" to eligible Idaho Medicaid beneficiaries under Medicaid

provider agreements.  *See* Idaho Code § 56-252(15).  DHWH had its own provider number, or

National Provider Identifier ("NPI").  DHWH converted to Dental Healthcare With Heart, P.C.,

an Idaho professional corporation, effective April 25, 2013.

COMPLAINT - 3

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1345,

and 31 U.S.C. §§ 3729, 3730(a), and 3732.

9.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) and

31 U.S.C. § 3732 because Defendants made the false claims alleged in this Complaint to the

Idaho Medicaid program in the District of Idaho.

10.     This Court has personal jurisdiction over the Defendants because the Defendants

resided in the District of Idaho, transacted business in the District of Idaho, and engaged in

wrongdoing in the District of Idaho.

## MEDICAID PROGRAM AND REQUIREMENTS

11.     Title XIX of the Social Security Act, enacted in 1965, established Medicaid as a

joint federal-state program that provides healthcare benefits for certain groups, primarily the

poor and disabled.  *See* 42 C.F.R. § 430.0.

12.     The Idaho Medicaid program is a state-administered health insurance program

that is predominantly funded (approximately 70%) by HHS, through its agency CMS.  The State

of Idaho funds approximately 30% of the Idaho Medicaid program.  The Idaho Department of

Health and Welfare administers the Idaho Medicaid program.

13.     CMS makes estimated quarterly payments to Idaho for the federal portion of the

expenditures from Idaho Medicaid programs.  *See* 42 C.F.R. § 430.30.  Idaho draws against these

federal funds as needed to pay the federal portion of the Idaho Medicaid program costs.  *Id.*

14.     The Idaho Medicaid program pays for all or a portion of the reasonable and

medically necessary procedures and services provided to individuals deemed eligible under

federal and state laws and regulations.  Dental services are among the types of reimbursable

COMPLAINT - 4

medical assistance available to Idaho Medicaid recipients.  The Idaho Medicaid dental program

is called Idaho Smiles.

15.     Idaho Smiles provides dental coverage for Idaho Medicaid participants.  During

the period for which Plaintiff United States of America is seeking damages and civil penalties

(*i.e.*, December 5, 2011 through January 31, 2013) ("Damages Period"), Blue Cross of Idaho was

the selected dental insurance contractor for the Idaho Smiles program.  The State of Idaho used

state and federal Medicaid funds to pay Blue Cross of Idaho.  The amount of state and federal

Medicaid funds paid to Blue Cross of Idaho is based, in part, on claims made during prior years.

As a result, Defendants' submission of false or fraudulent claims damaged Plaintiff United States

of America and the State of Idaho.

16.     As the selected dental insurance contractor for the Idaho Smiles program, Blue

Cross of Idaho subcontracted DentaQuest to handle claims administration and provider

enrollment.  Therefore, the claims that Defendants submitted or caused to be submitted to

DentaQuest to obtain reimbursement from Idaho Smiles for dental services were submitted to the

United States for purposes of the False Claims Act.

17.     To be eligible to submit Medicaid claims to Idaho Smiles, Medicaid providers

enter into an agreement with the Idaho Department of Health and Welfare or its agent (*i.e.*,

DentaQuest).  Under that agreement, providers agree to the following:

a.     To provide services in accordance with all applicable federal laws, and provisions of statutes, state rules, and federal regulations governing the reimbursement of services and items under Medicaid in Idaho, including IDAPA 16.03.09- "Medicaid Basic Plan Benefits," IDAPA 16.03.10 -"Medicaid Enhanced Plan Benefits," IDAPA 16.03.13- "Consumer Directed Services," IDAPA 16.03.17- "Medicare/Medicaid Coordinated Plan Benefits," and IDAPA 16.03.18- "Medicaid Cost Sharing," as amended; the current applicable Medicaid Provider Handbook; any Additional Terms attached hereto and hereby incorporated by reference; and any instructions contained in provider information releases or other program notices.

b.     To comply with the False Claims Act (31 U.S.C. §§ 3729-3733).

c.      To be licensed, certified, or registered with the appropriate state authority and to provide items and services in accordance with statute, rules, and professionally recognized standards by qualified staff or professionally supervised paraprofessionals where their use is authorized.

d.      To certify by the signature of the Provider or designee, including electronic signatures on a claim form or transmittal document, that the items or services claimed were actually provided and medically necessary, were documented at the time they were provided, and were provided in accordance with professionally recognized standards of health care, applicable Department rules, and this Agreement.

e.      The Provider agrees to bill only for service providers who have the qualifications required for the type of service that is being delivered.

f.      This Agreement shall be terminated immediately if the Provider's license or certification required by law is suspended, not renewed, or is otherwise not in effect at the time service is provided.

18.      The Idaho Medicaid Provider Handbook ("Provider Handbook") requires that all providers meet all applicable state and Idaho Department of Health and Welfare licensure/certification and insurance requirements to practice their profession.  The Provider Handbook requires appropriate licenses with appropriate state authorities in accordance with professionally recognized standards.  The Provider Handbook requires that the provider identify the individual who actually performed a service when billing under a group number.

19.      To be eligible to submit Medicaid claims to Idaho Smiles, providers must also enter an agreement with DentaQuest. Under DentaQuest's Dental Provider Service Agreement, dental providers agree to the following:

a.      Services must be medically necessary, which means in part that it must be of a quality that meets professionally recognized standards of health care; must be covered under the Idaho Smiles program administered by DentaQuest; must be provided by a provider (which is a dental professional or facility that has a written participation agreement in effect with DentaQuest to provide dental services); and must be care that is consistent with professionally recognized standards of dental practice within the service area and applicable policies and procedures.

b.      The provider agrees to provide necessary and appropriate dental services within the scope of their licensure.

COMPLAINT - 6

c.      The provider represents and warrants that it has full authority to bind those providers listed as provider dentists to the terms and conditions of the agreement.

d.      The provider agrees not to seek payment or reimbursement for services not actually performed by the provider or not medically necessary.

e.      The provider shall submit claims as required by DentaQuest and shall use the most current standard American Dental Association claim form.  The procedures must be listed in accordance with the Current Dental Terminology code book.  The provider shall code all claims in a manner that accurately reflect the services performed.

f.      The provider agrees to comply with any and all policies, procedures, rules, and regulations of the Idaho Smiles program including credentialing standards.

g.      The provider warrants that it is licensed to practice dentistry, and that the provider will provide dental care that meets or exceeds the average standard of care for dentists as established by State or Federal law or regulation.

h.      The provider agrees to comply with DentaQuest standards set forth in the Office Reference Manual.

## IDAHO LAW REGARDING DENTISTRY AND DENTAL HYGIENE

20.      Idaho Code § 54-924(13) prohibits a dentist from practicing dentistry "in any business entity in which a person, not duly licensed to practice dentistry in this state, holds an ownership interest."

21.      A professional limited liability company may render a professional service including dentistry.  Idaho Code §§ 30-6-102(19), (20).

22.      The members or owners of an Idaho professional limited liability company organized to practice dentistry must be licensed dentists and no non-dentist may be a member or owner.  *See* Idaho Code §§ 30-6-102(19) & 30-6-201A(5).

23.      Idaho Code § 54-903 defines three levels of required supervision of dental hygienists by dentists depending on the type of procedure: general supervision, indirect supervision, and direct supervision.  General supervision requires the dentist to authorize the routine procedures carried out by the dental hygienist but the dentist does not need to be in the

COMPLAINT - 7

office when the procedures are performed.  Indirect supervision requires the dentist to authorize

the procedure and be in the office when the procedure requiring indirect supervision is performed

by the hygienist.  Direct supervision requires the dentist to diagnose the condition, authorize the

procedure, be in the office, and approve the work before the patient is dismissed.

24.     The practice rules for Idaho dental hygienists are found at Idaho Administrative

Code 19.01.01.  Idaho Administrative Code 19.01.01.030 describes the procedures that require

the different levels of supervision.  Every dental duty performed by a dental hygienist requires, at

minimum, general supervision of a licensed dentist.

25.     Idaho Administrative Code 19.01.01.031 describes the duties that a dental

hygienist is prohibited from performing regardless of the level of supervision.  One example is

that a dental hygienist may not perform "[d]efinitive diagnosis and dental treatment planning."

IDAPA 19.01.01.31.01.a.

26.     A dentist or dental hygienist is prohibited from "[p]racticing or offering to

practice beyond the scope permitted by law, or accepting and performing professional

responsibilities that the licensee knows or has reason to know that he or she is not competent to

perform."  IDAPA 19.01.01.40.14.

27.     Idaho Administrative Code 19.01.01.40.18 provides that a dentist or dental

hygienist is prohibited from failing to "comply with any provisions of federal, state or local laws,

statutes, rules, and regulations governing or affecting the practice of dentistry or dental hygiene."

## THE FALSE CLAIMS ACT

28.     The False Claims Act ("FCA") states:

> (a) Liability for Certain Acts.-
> (1) In general.—Subject to paragraph (2), any person who—
> (A) knowingly presents, or causes to be presented, a false or
> fraudulent claim for payment or approval;

COMPLAINT - 8

(B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;

. . . is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000 as adjusted by the Federal Civil Penalties Inflation Adjustment Act . . . , plus 3 times the amount of damages which the Government sustains because of the act of that person.

29.     The False Claims Act defines "knowing" and "knowingly" as having actual knowledge that the information is false, or acting with a deliberate ignorance of, or reckless disregard for, the truth or falsity of the information.  31 U.S.C. § 3729(b)(1).  The FCA does not require proof of specific intent to defraud.

### SPECIFIC ALLEGATIONS

30.     Dillon obtained her Idaho dental hygienist license on or about January 8, 1985, and maintained that license through at least January 2013.  Her license number was DH-0562.

31.     Dillon knew that as a dental hygienist she was required to practice under the supervision of a dentist.  On July 1, 2002, Dillon sent a letter to the State of Idaho Board of Dentistry ("Board") informing the Board that she had "been approached with an opportunity to practice dental hygiene in a clinical setting under the direct supervision of a Medical Doctor and the indirect supervision of a Dentist."  She then petitioned the Board for permission to perform all dental hygiene procedures allowed by Idaho State law, including administration of local anesthetic, under the general supervision of a dentist and under the indirect supervision of a physician.

32.     On October 10, 2002, the Board sent Dillon a letter denying her request because it did not comply with Idaho law.  In its letter, the Board highlighted the definitions of direct supervision, general supervision, and indirect supervision found at Idaho Code § 54-903.  The Board then set forth the requirements in Idaho Code § 54-904 relating to procedures performed

COMPLAINT - 9

under general supervision by a dental hygienist and in Idaho Code § 54-905 relating to the

unlawful practice of dental hygiene.  The Board also set out the provision of Rule 30 related to

Dental Hygienists, which discusses the acts that dental hygienists are prohibited from

performing.  The Board informed Dillon that, besides practicing under a supervisory dentist in an

institutional setting, "a dental hygienist may only practice under the general supervision of a

dentist in a dental office."  The Board also informed Dillon that the administration of anesthesia

requires the indirect supervision of a dentist.

33.     On or about May 10, 2003, Dillon faxed an inquiry to the Board regarding a

proposed change to Idaho statutes and rules regarding dental hygienists practicing under a

special endorsement in a "public setting dental hygiene program."

34.     On or about May 16, 2003, the Board responded to Dillon's fax with a letter and

again referenced the need for dental hygienists to be supervised by a dentist.

35.     Notwithstanding the fact that Idaho Code § 54-924(13) prohibits a non-dentist

from owning a dental practice, Dillon formed, owned, managed, directed, and controlled

DHWH.

36.     On or about August 10, 2005, Dillon filed a federal form SS-4, Application for

Employer Identification Number, listing DHWH as a sole proprietorship under Dillon's social

security number.  An Employer Identification Number was provided the same day.

37.     On or about August 15, 2005, Dillon formed DHWH as an Idaho professional

limited liability company.    The articles of organization listed DHWH's practice as "Dentistry."

Dillon signed the articles as the forming person and listed herself as the only member.  The

articles state that management is vested in the members.  Thus, she was the managing member.

COMPLAINT - 10

38.     On or about August 4, 2006, Dillon Filed a W-9 Request for Taxpayer

Identification Number and Certification for DHWH.

39.     Dillon filed annual reports with the Idaho Secretary of State for DHWH for the

years 2006 and 2008 through 2012.  Dillon was the sole member of DHWH listed in these

reports. Dillon's husband, Ken Dillon, signed the 2007 annual report, which listed both Dillon

and Ken Dillon as members.

40.     In 2005, DHWH entered into a Medicaid Provider Agreement with the Idaho

Department of Health and Welfare.  Dillon signed the 2005 Idaho Department of Health and

Welfare Medicaid Provider Agreement on behalf of DHWH.  In that agreement, Dillon indicated

her position as "owner."  Additionally, Dillon signed a "Signature on File Form," which

indicates that as the responsible corporate official "all charges submitted are true, accurate, and

complete," that the signing person is authorized to sign for the payee, and that the signing person

understands that claims are paid from federal and state funds, under which any falsification or

concealment of material fact is subject to prosecution.

41.     In September 20, 2007, DHWH entered into an Idaho Smiles dental program

participating provider agreement with Blue Cross of Idaho.  Dillon used the signature stamp of

Dr. Theodore Fricke, DDS ("Dr. Fricke") to sign the document.

42.     During the Damages Period, Dillon managed and directed DHWH's submission

of claims to DentaQuest.  Thus, she submitted or caused to be submitted all of the Medicaid

claims that DHWH submitted to DentaQuest.

43.     Dr. Fricke, an Idaho licensed dentist, worked part-time at DHWH through July

16, 2010.  Defendants paid Dr. Fricke approximately one third of the revenue he generated

COMPLAINT - 11

providing Medicaid services.  The remaining two thirds went to DHWH.  DHWH did not pay

Dr. Fricke for any portion of the services provided by Dillon.

44.     Due to health issues, Dr. Fricke did not work at DHWH after July 16, 2010.  Dr.

Fricke received no payments from DHWH or Dillon for services provided after July 16, 2010.

45.     In the summer of 2010, Dillon began hiring other dentists on a part-time basis.

When Dillon hired the other dentists, she represented or at least implied that Dr. Fricke owned

DHWH and that he had performed examinations on patients, and developed plans for the

patients' treatment.  The dentists believed that the plans they followed in rendering patient care

were developed by Dr. Fricke.  In reality, notwithstanding the fact that Idaho Administrative

Code 19.01.01.031 prohibits dental hygienist from performing "[d]efinitive diagnosis and dental

treatment planning," Dillon performed the initial examinations, diagnosed the patients, and

developed the treatment plans for the patients, not Dr. Fricke.

46.     Dillon operated DHWH as if Dr. Fricke were actively practicing dentistry and

supervising her work before and after July 2010.  To do this, she used the identity and credentials

of Dr. Fricke, even though Dr. Fricke became homebound and unable to practice dentistry.

Dillon renewed Dr. Fricke's dental and pharmacy licenses and completed online continuing

education courses as if she were Dr. Fricke in order to keep his license active, used his

credentials at DHWH, and submitted false or fraudulent claims to DentaQuest for services under

Dr. Fricke's name.  DentaQuest would not have paid these claims had it known that Dillon

unlawfully performed the initial examinations, diagnosed the patients, and developed the

treatment plans for the patients, not Dr. Fricke.

47.     Defendants acted with actual knowledge, in deliberate ignorance of the truth or

falsity of the information, or in reckless disregard of the truth or falsity of the information when

COMPLAINT - 12

they caused claims for services performed based on Dillon's unlawful initial examinations, diagnoses, and treatment plans to be submitted to DentaQuest.

48.     During the Damages Period, Dillon knowingly submitted or caused DHWH to submit false or fraudulent claims to DentaQuest for reimbursement for services that were not performed.  Dillon, through DHWH, knowingly submitted claims to DentaQuest for services purportedly performed when Dillon was out of the country and no dentist was working.  For example (but not limited to these instances), Dillon was outside the state and/or country in June 2011, from March through April 2012, and in July 2012.  Nevertheless, Dillon knowingly caused claims to be submitted to DentaQuest during these time periods for dental hygiene services that were not performed.  DentaQuest, unaware that the services were not provided, paid DHWH for these claims.  DentaQuest would not have paid these claims if it had known the services were not provided.

49.     Defendants acted with actual knowledge, in deliberate ignorance of the truth or falsity of the information, or in reckless disregard of the truth or falsity of the information when they caused claims for services not provided to be submitted to DentaQuest.

50.     During the Damages Period, Dillon knowingly caused false or fraudulent claims to be submitted to DentaQuest for reimbursement for procedures she performed without the requisite dentist supervision.  These procedures include, but are not limited to, procedures a dental hygienist may only perform when a dentist is present in the office but which Dillon performed when no dentist was present in the office.  Specifically, Dillon knowingly caused claims to be submitted to DentaQuest for dental hygienist procedures requiring direct or indirect supervision pursuant to Idaho Code § 54-903 and regulations even though no dentist was present.

COMPLAINT - 13

DentaQuest would not have paid these claims if it had known the services were not provided with the requisite direct or indirect supervision.

51.     Defendants acted with actual knowledge, in deliberate ignorance of the truth or falsity of the information, or in reckless disregard of the truth or falsity of the information when they caused claims for services not performed under the requisite direct or indirect supervision to be submitted to DentaQuest.

52.     During the Damages Period, Dillon also regularly and consistently performed procedures requiring general supervision by a dentist without the requisite supervision.  In other words, she performed dental hygiene procedures that require dentist authorization without the requisite authorization.  The dentists that Dillon hired were not involved with authorizing and supervising Dillon's dental hygiene procedures.  These dentists performed services that Dillon had already scheduled and predetermined to be necessary.  Nevertheless, Dillon knowingly caused claims to be submitted to DentaQuest for these procedures, and DentaQuest paid the claims.  DentaQuest would not have paid these claims if it had known the services were not provided with the requisite general supervision.

53.     Defendants acted with actual knowledge, in deliberate ignorance of the truth or falsity of the information, or in reckless disregard of the truth or falsity of the information when they caused claims for services not performed under the requisite general supervision to be submitted to DentaQuest.

54.     During the Damages Period, Dillon performed dental procedures outside the scope of her license.  Specifically, Dillon, a dental hygienist, performed procedures that only a dentist is allowed to perform.  Defendants knowingly caused false or fraudulent claims to be

submitted to DentaQuest for reimbursement for such procedures.  DentaQuest would not have paid these claims if it had known that the procedures were not performed by a dentist.

54. Defendants acted with actual knowledge, in deliberate ignorance of the truth or falsity of the information, or in reckless disregard of the truth or falsity of the information when they caused claims to be submitted to DentaQuest for procedures performed by Dillon, a dental hygienist, that can only lawfully be performed by a dentist.

56. During the Damages Period, Defendants knowingly caused claims to be submitted to DentaQuest that falsely or fraudulently listed the treating dentist as Dr. Fricke when the procedures were actually performed by Dillon or another dentist that Dillon hired.  Indeed, notwithstanding the fact that Dr. Fricke performed no dental procedures at DHWH after July 16, 2010, every claim that Defendants caused to be submitted to DentaQuest during the Damages Period listed Dr. Fricke as the treating dentist.  Thus, all claims that Defendants caused to be submitted to DentaQuest for services performed between July 17, 2010 and January 31, 2013 were false or fraudulent.  DentaQuest would not have paid these claims if it had known that they falsely identified Dr. Fricke as the treating dentist.

57. During the Damages Period, Defendants submitted a total of 820 false or fraudulent claims to DentaQuest.  Specific examples of false claims Defendants knowingly caused to be submitted to DentaQuest include, but are not limited to, the following:

| Claim Number | Billing Dental Entity | Purported Treating Dentist | Procedure Code | Procedure Date |
|---|---|---|---|---|
| 201204515006300 | DHWH | Fricke | D0120, D1110, D0272, D1204 | 2/6/2012 |
| 201204520678700 | DHWH | Fricke | D7140(x2), D7210(x2) | 2/6/2012 |
| 201205225499400 | DHWH | Fricke | D2391, D1351(x2) | 2/14/2012 |
| 201212110335100 | DHWH | Fricke | D0120, D110, D0274, D1351(x3), D1204 | 4/2/2012 |

COMPLAINT - 15

| 201224010215000 | DHWH | Fricke | D0120, D1110, D0272, D1204 | 8/20/2012 |
| 201225517171700 | DHWH | Fricke | D0120, D2391(x4), D110, D0274, D1204 | 9/4/2012 |
| 201225517171800 | DHWH | Fricke | D0120, D2391(x4), D1351, D0272, D1203 | 9/4/2012 |
| 201225517171400 | DHWH | Fricke | D2391(x4) | 9/5/2012 |
| 201233820595000 | DHWH | Fricke | D5211, D5212 | 11/26/2012 |
| 201236325149600 | DHWH | Fricke | D0120, D2391(x2), D0210, D1120, D1203 | 12/24/12 |

58.     On February 9, 2016, the federal Grand Jury for the District of Idaho returned a fourteen (14) count Indictment against Dillon for a violation of the Health Care Fraud statute, Title 18, United States Code Section 1347 and for a violation of the Aggravated Identity Theft statute, Title 18, United States Code Section 1028A (a) and (c)(4).

59.     On February 18, 2016, Dillon entered a not guilty plea.

60.     On July 14, 2016, the federal Grand Jury for the District of Idaho returned a forty-eight (48) count Superseding Indictment against Dillon containing twenty-four (24) counts alleging violations of the Health Care Fraud statute, Title 18, United States Code Section 1347 and twenty-four (24) counts alleging violations of the Aggravated Identity Theft statute, Title 18, United States Code Section 1028A (a) and (c)(4).

61.     On January 23, 2017, Dillon's criminal trial commenced.

62.     On January 27, 2017, after the government rested its case, Dillon pled guilty to all counts in the Superseding Indictment.  The 24 counts of health care fraud to which Dillon pled guilty alleged a fraud scheme spanning January 1, 2010 through December 31, 2013.  The district court accepted Dillon's guilty plea.

COMPLAINT - 16

63.     On June 6, 2017, the district court held a sentencing hearing at which it sentenced

Dillon to a total of sixty (60) months of incarceration followed by three (3) years of supervised

probation.  The district court entered a judgment in Dillon's criminal case on the same day.  *See*

*United States of America v. Dillon*, Case No. 1:16-cr-00037-BLW, ECF No. 79.

64.     On October 27, 2017, the district court issued a Memorandum Decision and Order

on restitution and forfeiture.  Therein, the district court found:

> During the trial, the Government established through the testimony of several witnesses
> that between the years alleged in the Superseding Indictment – 2010 to 2013 – *all of the
> defendant's billings were fraudulent*.  Those billings were for (1) dental services done
> improperly by defendant; (2) hygiene services done by the defendant and others without
> the proper supervision of a dentist; and (3) dental services done by contract dentists
> proceeding under the defendant's misrepresentation that Dr. Fricke had seen the patient
> and planned their treatment.

*Id.,* ECF No. 102 at 4 (emphasis added).

65.     Under 31 U.S.C. § 3731, "[n]otwithstanding any other provision of law, the

Federal Rules of Criminal Procedure, or the Federal Rules of Evidence, a final judgment

rendered in favor of the United States in any criminal proceeding charging fraud or false

statements . . .  upon a plea of guilty  . . . shall estop the defendant from denying the essential

elements of the offense in any [FCA civil] action which involves the same transaction as in the

criminal proceeding . . . ."

## COUNT I
### (False Claims Act, 31 U.S.C. § 3729(a)(1)(A))

66.     Plaintiff incorporates all previous paragraphs as if fully set forth herein.

67.     Through the acts described above, Defendants knowingly presented, or caused to

be presented, false or fraudulent claims to the Idaho Medicaid program in violation of 31 U.S.C.

§ 3729(a)(1)(A).  Specifically, throughout the Damages Period, Defendants knowingly

presented, or caused to be presented, Medicaid claims that were false or fraudulent because the

COMPLAINT - 17

claims sought reimbursement for dental procedures that were:  (a) not performed; (b) performed

by Dillon, a dental hygienist, when they can only lawfully be performed by a dentist; (c)

performed by Dillon without the requisite supervision of a dentist; (d) not performed by the

person indicated in the claim; and (e) performed by contract dentists proceeding under Dillon's

misrepresentation that a dentist had seen the patient and planned their treatment.  In addition, all

claims Medicaid claims that Defendants presented, or caused to be presented, were false or

fraudulent because DHWH was owned by a non-dentist (*i.e.*, Dillon) in violation of Idaho law.

68.     DentaQuest would not have paid the claims that Defendants presented, or caused

to be presented, during the Damages Period if it had known that the procedures were:  (a) not

performed; (b) performed by Dillon, a dental hygienist, when they can only lawfully be

performed by a dentist; (c) performed by Dillon without the requisite supervision of a dentist; (d)

not performed by the person indicated in the claim; and (e) performed by contract dentists

proceeding under Dillon's misrepresentation that a dentist had seen the patient and planned their

treatment.  In addition, DentaQuest would not have paid the claims Defendants presented, or

caused to be presented, during the Damages Period if it had known that DHWH was owned by a

non-dentist (*i.e.*, Dillon) in violation of Idaho law.

69.     Each false or fraudulent claim that Defendants presented, or caused to be

presented, is a separate violation of the FCA.

70.     By virtue of the false or fraudulent Medicaid claims made by Defendants, the

United States of America has suffered damages and, therefore, is entitled to treble damages

under the FCA in an amount to be proven at trial, plus a civil penalty of $5,500 to $11,000 for

each FCA violation.

COMPLAINT - 18

## COUNT II
### (False Claims Act, 31 U.S.C. § 3729(a)(1)(B))

71.     Plaintiff incorporates all previous paragraphs as if fully set forth herein.

72.     Through the acts described above, Defendants knowingly made, used, or cause to be made or used false records and statements material to false or fraudulent Medicaid claims in violation of 31 U.S.C. § 3729(a)(1)(B), including, but not limited to, false records and statements indicating that:  (a) Dr. Fricke had performed the procedures for which Defendants sought payment; and (b) Dr. Fricke had examined, diagnosed, and developed treatment plans for patients.

73.     These records and statements are false because: (a) Dr. Fricke performed no dental procedures during the Damages Period; and (b) Dr. Fricke did not examine, diagnose, or develop treatment plans for patients during the Damages Period.

74.     These false records and statements are material because DentaQuest would not have paid claims had it known that:  (a) Dr. Fricke did not perform the procedures during the Damages Period; and (b) Dr. Fricke did not examine, diagnose, or develop treatment plans for patients during the Damages Period.

75.     Each false record or statement that Defendants made, used, or caused to be made or used is a separate violation of the FCA.

76.     By virtue of the false records and statements that Defendants made, used, or caused to be made or used to get false Medicaid claims paid, the United States of America has suffered damages and, therefore, is entitled to treble damages under the FCA in an amount to be proven at trial, plus a civil penalty of $5,500 to $11,000 for each FCA violation.

## PRAYER FOR RELIEF

WHEREFORE, the United States of America prays that this Court enter judgment in its

favor and against Defendants, granting the following:

(a)  Treble its damages, in an amount to be determined at trial;

(b)  A civil penalty of $5,500 to $11,000 for each of Defendants' FCA violations, and

(c)  Such other and further relief as this Court deems proper.


DATED this 5th day of December 2017.


                                        BART M. DAVIS
                                        UNITED STATES ATTORNEY
                                        By:


                                        /s/ James P. Schaefer
                                        JAMES P. SCHAEFER
                                        Assistant United States Attorney


COMPLAINT - 20