UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CHERIE R. DILLON and DENTAL HEALTHCARE WITH HEART, P.C., (successor in interest to DENTAL HEALTHCARE WITH HEART, PLLC),<br><br>Defendants. | Case No. 1:17-cv-00498-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

**INTRODUCTION**

Before the Court are two substantially identical pro se motions filed by defendant Cherie R. Dillon and third party Ken Dillon. Each motion is styled as a "motion to amend subpoena and extract exempted property." *See* Dkts. 68, 70. The Court will construe these motions as motions to modify subpoenas the government has served upon the Dillons. For the reasons explained below, the Court will deny the motions.

**BACKGROUND**

In November 2019, this Court entered a $1.1 million judgment in this case – $550,000 against Defendant Cherie Dillon and $550,000 against Defendant Dental

Healthcare with Heart, P.C. The government is gathering information about the Dillons' assets as part of its effort to collect on the judgment. In September 2022, the United States served two separate subpoenas, one on Ms. Dillon and one upon her spouse, Ken Dillon. The subpoenas seek various records related to each of the Dillon's financial accounts, including their retirement accounts. As one representative example, the subpoenas direct the Dillons to turn over monthly or quarterly account statements, from January 2022 to present, for all financial accounts. *See Subpoenas, Ex. A thereto,* Dkt. 71-1. Additionally, focusing specifically on retirement accounts held at Edward Jones, the subpoenas state that the documents provided for those accounts must show "all deposits, withdrawals, distributions, and transfers" from January 1, 2022 to the present. *Id.* Then, under an additional heading titled "Additional Documentation Related to Edward Jones Accounts," the subpoenas contain the following directive:

> Provide documentation showing any withdrawal or distribution from Edward Jones accounts on or after January 1, 2022 and provide documentation showing where the funds were deposited (if not paid toward the Asset Forfeiture amount). Provide documentation showing the current location of funds withdrawn or distributed from Edward Jones accounts after January 1, 2022 (unless withdrawal or distribution went to pay the Asset Forfeiture amount). If the funds withdrawn or distributed from Edward Jones accounts are no longer in your custody or control, provide documentation (such as receipts) evidencing the expenditure of the funds.

*Id.*

MEMORANDUM DECISION AND ORDER - 2

The Dillons have partly complied with the subpoena. In November 2022, they produced six account statements (covering the period May through October 2022) for two IRAs held at E-Trade. They also provided this explanation in an email to government counsel:

> Mr. Humphries:
>
> I am sending this information in reference to your subpoena. After the Judge made his decision on the forfeiture method and process of splitting the Edward Jones accounts in half and using Cherie's 50% of Both retirement plans to Pay the Restitution and the Forfeiture. The remaining 50% of Both accounts would be Ken's.
>
> All of the Edward Jones accounts were closed and the fund were rolled over into E trade. (copies of pertinent statements enclosed). The remaining 50% of Cherie's retirement funds have been being sold and used to cover home repairs and maintenance, property survey, fence installation, auto repair and maintenance, medical procedures and bills and any other expenditures that have that have arisen. Also attorney fee pay off. An actual accounting of these expenditures has not been maintained and the home repairs are in an ongoing state.
>
> Ken and Cherie Dillon

*Nov. 16, 2022 email, Ex. C to Gvt. Motion,* Dkt. 71-3. The government notes that the Dillons did not produce any account statements for Edward Jones or for other accounts. *Mtn. Mem.*, Dkt. 71, at 3. Additionally, the government reports that "The Dillons have also not provided documentation as to the use or location of the funds withdrawn from the Edward Jones account(s) except for the E-Trade statements." *Id.* The Dillons, for their part, argue that the retirement accounts are "exempt from

garnishment." As such, they ask the Court to "amend" the subpoena.

## LEGAL STANDARD

Post-judgment discovery is governed by Federal Rule of Civil Procedure 69(a)(2), which provides:

> In aid of the judgment or execution, the judgment creditor or a successor in interest whose interest appears of record may obtain discovery from any person – including the judgment debtor – as provided in these rules or by the procedure of the state where the court is located.

Fed. R. Civ. P. 69(a)(2).[1] The scope of post-judgment discovery under Rule 69(a)(2) is very broad – it is "constrained principally in that it must be calculated to assist in collecting on a judgment." *EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 207 (2d Cir. 2012); *see also United States v. Conces*, 507 F.3d 1028, 1040 (6th Cir. 2007) (describing the scope of post-judgment discovery as "very broad"); *FDIC v. LeGrand*, 43 F.3d 163, 172 (5th Cir. 1995) (same). It follows, then, that post-judgment discovery must be relevant to the existence or transfer of a judgment debtor's assets. *See generally* Fed. R. Civ. P. 26.

Post-judgment discovery is permitted against third parties, so long as it is aimed at uncovering information about the judgment debtor's financial affairs. *See*

---

[1] Idaho's Rule of Civil Procedure 69(c) similarly provides for post-judgment discovery: "In aid of the judgment or execution, the judgment creditor or successor in interest . . . may obtain discovery from any person, including the judgment debtor, as provided in these rules and may examine any person, including the judgment debtor, in the manner provided by these rules."

**MEMORANDUM DECISION AND ORDER - 4**

*generally Caisson Corp. v. Cnty. West Bldg. Corp.*, 62 F.R.D. 331, 334 (E.D. Pa. 1974). Courts often allow judgment creditors to obtain discovery from third-party spouses, reasoning that information about a spouse's financial affairs may lead to discovery of marital assets that can be used to satisfy the judgment, or to money or property that was transferred to the spouse to evade creditors. *See Andrews v. Raphaelson,* No. 5:09-cv-077, 2009 WL 1211136, at *3 (E.D. Ky. Apr. 30, 2009); *see also, e.g., Vazquez v. Ranieri Cheese Corp.*, No. CV-07-464, 2013 WL 101579, at *2 (E.D.N.Y. Jan. 8, 2013) ("[D]iscovery concerning a non-party's assets is permitted if the relationship between the judgment debtor and the non-party is such that the non-party may possess concealed or fraudulently transferred assets of the judgment debtor ....").

Here, the government served Rule 45 subpoenas upon Ms. Dillon and her husband.[2] *See generally* Fed. R. Civ. P. 45. As with all discovery, a party serving a Rule 45 subpoena bears the initial burden of demonstrating the requested discovery is relevant as defined by Rule 26 of the Federal Rules of Civil Procedure. The

---

[2] Rule 45 governs discovery directed at nonparties. Ms. Dillon is a party, so the government could have served a Rule 34 request for production of documents upon her. After all, Rule 69 entitles a judgment creditor to "the full panoply of federal discovery measures" – including a Rule 34 request. *See Magnaleasing, Inc. v. Staten,* 76 F.R.D. 559, 560 n.1 (S.D.N.Y. 1977). But this is a distinction without a difference, given that a person facing a Rule 45 subpoena is subject to the same obligations as a party proceeding under Rule 34. *See generally* Fed. R. Civ. P. 45, Advisory Comm. Notes, 1991 Amend. Sub (a).

person commanded to produce documents may serve a written objection to the subpoena. Fed. R. Civ. P. 45(d)(2)(B). They also may file a motion for a protective order or to quash or modify the subpoena. Fed. R. Civ. P. 45(d)(3) and (e).

## ANALYSIS

The Court will construe the Dillons' pro se filings as a request to modify the subpoenas on the ground that they seek information about retirement accounts, which they claim are exempt from execution.

### 1. Timeliness

As a threshold matter, the government says the Court should deny the motion because it was filed two days late. Based on the Dillons' explanation, alongside the fact that this delay is de minimis, the Court will grant the Dillons a retroactive extension and reach the merits of their motion. The Dillons should be warned, however, that the Court will not always grant such extensions. If there are any additional proceedings in this matter, they should be sure to timely comply with all relevant deadlines or timely seek and obtain extensions of those deadlines.

### 2. The Request for Documents Related to the Edward Jones Accounts

Turning to the merits, the Dillons' primary argument is that they should not have to turn over documents about their retirement accounts because those accounts are exempt from execution. But just because an asset may be exempt from execution does not categorically prohibit a judgment creditor from seeking

discovery about that asset. Rather, "the judgment creditor is allowed discovery to find out about assets on which execution can issue or about assets that have been fraudulently transferred or are otherwise beyond the reach of execution." *12 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure* § 3014 (3d. ed. 2022). And, as the government has pointed out, other courts have permitted post-judgment discovery related to retirement accounts – even where the judgment debtor has argued that the accounts are exempt from execution.

In *ITOCHU Int'l, Inc. v. Devon Robotics, LLC*, 303 F.R.D. 229, 233 (E.D. Pa. 2014), for example, the judgment creditor sought information about retirement accounts because it "questioned whether the asset transfers into these allegedly-protected retirement accounts were proper." The court allowed the judgment creditor to obtain discovery so that it could determine whether those transfers were, in fact, proper. The court said that whether the accounts could be executed upon was a question reserved for another day. *Id.*

Similarly, in *Bell v. Lantz*, No. 1:13-cv-0035, 2015 WL 6609290 (S.D. Ind. Oct. 30, 2015), the court allowed a judgment creditor to obtain information about a retirement account because the judgment creditor believed the defendant was concealing assets. The court held that although the judgment creditor "offered no proof of concealment, he should be allowed to discover asset information in an effect to substantiate his suspicions and to discover information that may lead to

the discovery of other assets subject to execution." *Id.* at *3.

The central teaching of these types of cases – as well as those cited above – is that in the post-judgment context, a judgment creditor has a legitimate need acquire to information reasonably available to locate and identify the judgment debtor's assets. Put differently, "a judgment creditor is entitled to fish for assets of the judgment debtor." *Banco Central de Paraguay v. Paraguay Humanitarian Foundation, Inc.*, No. 01-Civ-9649, 2006 WL 3456521, at *9 (S.D.N.Y. Nov. 30, 2006). Here, the government is not seeking information about a static retirement account – that is, one that does not have any recent withdrawals or deposits. Rather, it is trying to track withdrawals from those accounts to determine where any assets purchased with those funds (or the funds themselves) are currently located. Seeking this sort of information is a legitimate attempt to identify and locate assets that may be subject to execution. Accordingly, the Court will deny the motion.

The Court will clarify, however, that, at this point it is not deciding whether any given asset is subject to execution. Rather, it is simply allowing the government to engage in discovery related to retirement accounts, including the Edward Jones accounts.

MEMORANDUM DECISION AND ORDER - 8

## ORDER

**IT IS ORDERED that:**

1. Defendant Cherie Dillon and Third Party Ken Dillon's Motions To Amend Subpoena and Extract Exempted Property (Dkts. 68, 70) are **DENIED**.

2. The Clerk is directed to administratively terminate the motion filed at Dkt. 222 in *United States v. Dillon,* No. 1:16-cr-00037-BLW.

3. The Dillons are directed to provide responsive documents within 30 days of this Order.

DATED: February 8, 2023

B. Lynn Winmill
U.S. District Court Judge