UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CHERIE R. DILLON and DENTAL HEALTHCARE WITH HEART, P.C., (successor in interest to DENTAL HEALTHCARE WITH HEART, PLLC),<br><br>Defendants. | Case No. 1:17-cv-00498-BLW<br><br>**ORDER TO SHOW CAUSE RE CONTEMPT** |

# INTRODUCTION

Before the Court is the government's Motion for Order to Show Cause and Civil Contempt Relief for Failure of Cherie and Kenneth Dillon to Comply with the Court's Order Filed at ECF No. 74 (Dkt. 79). Additionally, Defendant Cherie Dillon has filed two related motions – an alternative motion to stay these proceedings pending a writ of mandamus (Dkt. 84) and a motion for a temporary restraining order (Dkt. 86). For the reasons explained below, the Court will deny Ms. Dillon's motions and grant the government's motion to the extent that it will schedule a show-cause hearing.

**MEMORANDUM DECISION AND ORDER - 1**

## BACKGROUND

In November 2019, this Court entered a $1.1 million judgment in this case – $550,000 against Defendant Cherie Dillon and $550,000 against Defendant Dental Healthcare with Heart, P.C. The government is gathering information about the Dillons' assets as part of its effort to collect on the judgment. In September 2022, the United States served two separate subpoenas, one on Ms. Dillon and one upon her spouse, Ken Dillon. The subpoenas seek various records related to each of the Dillon's financial accounts, including their retirement accounts. As one representative example, the subpoenas direct the Dillons to turn over monthly or quarterly account statements, from January 2022 to present, for all financial accounts. *See Subpoenas, Ex. A thereto,* Dkt. 71-1. Additionally, focusing specifically on retirement accounts held at Edward Jones, the subpoenas state that the documents provided for those accounts must show "all deposits, withdrawals, distributions, and transfers" from January 1, 2022 to the present. *Id.* Then, under an additional heading titled "Additional Documentation Related to Edward Jones Accounts," the subpoenas contain the following directive:

> Provide documentation showing any withdrawal or distribution from Edward Jones accounts on or after January 1, 2022 and provide documentation showing where the funds were deposited (if not paid toward the Asset Forfeiture amount). Provide documentation showing the current location of funds withdrawn or distributed from Edward Jones accounts after January 1, 2022 (unless withdrawal or distribution went to pay the Asset Forfeiture amount). If the funds withdrawn or

MEMORANDUM DECISION AND ORDER - 2

>distributed from Edward Jones accounts are no longer in your custody or control, provide documentation (such as receipts) evidencing the expenditure of the funds.

*Id.*

The Dillons partly complied with the subpoenas. In November 2022, they produced six account statements for two IRAs held at E*Trade, and they recently produced two additional statements for those accounts. They did not, however, produce any account statements for Edward Jones or for any other financial accounts. In an earlier order, this Court ordered the Dillons to produce additional responsive documents within 30 days. *See* Dkt. 74. The government reports that, as of this date, the Dillons still have not fully complied with the subpoenas.

In response Ms. Dillon asserts that she and Mr. Dillon have produced all information regarding the Edward Jones accounts. She also argues that she "cannot produce information that does not exist." Dkt. 78, at 1. She says that (1) the Edward Jones accounts have been closed; (2) all funds from the Edward Jones accounts were rolled over to E*Trade; and (3) she has produced all E*Trade statements. *Id.* at 2. Otherwise, she suggests that the Dillons do not possess any additional responsive documents.

## LEGAL STANDARD

### A.   Post-judgment Discovery

Post-judgment discovery is governed by Federal Rule of Civil Procedure

MEMORANDUM DECISION AND ORDER - 3

69(a)(2), which provides:

> In aid of the judgment or execution, the judgment creditor or a successor in interest whose interest appears of record may obtain discovery from any person – including the judgment debtor – as provided in these rules or by the procedure of the state where the court is located.

Fed. R. Civ. P. 69(a)(2).[1] The scope of post-judgment discovery under Rule 69(a)(2) is very broad – it is "constrained principally in that it must be calculated to assist in collecting on a judgment." *EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 207 (2d Cir. 2012); *see also United States v. Conces*, 507 F.3d 1028, 1040 (6th Cir. 2007) (describing the scope of post-judgment discovery as "very broad"); *FDIC v. LeGrand*, 43 F.3d 163, 172 (5th Cir. 1995) (same). It follows, then, that post-judgment discovery must be relevant to the existence or transfer of a judgment debtor's assets. *See generally* Fed. R. Civ. P. 26.

Post-judgment discovery is permitted against third parties, so long as it is aimed at uncovering information about the judgment debtor's financial affairs. *See generally Caisson Corp. v. Cnty. West Bldg. Corp.*, 62 F.R.D. 331, 334 (E.D. Pa. 1974). Courts often allow judgment creditors to obtain discovery from third-party spouses, reasoning that information about a spouse's financial affairs may lead to

---

[1] Idaho's Rule of Civil Procedure 69(c) similarly provides for post-judgment discovery: "In aid of the judgment or execution, the judgment creditor or successor in interest . . . may obtain discovery from any person, including the judgment debtor, as provided in these rules and may examine any person, including the judgment debtor, in the manner provided by these rules."

**MEMORANDUM DECISION AND ORDER - 4**

discovery of marital assets that can be used to satisfy the judgment, or to money or property that was transferred to the spouse to evade creditors. *See Andrews v. Raphaelson,* No. 5:09-cv-077, 2009 WL 1211136, at *3 (E.D. Ky. Apr. 30, 2009); *see also, e.g., Vazquez v. Ranieri Cheese Corp.*, No. CV-07-464, 2013 WL 101579, at *2 (E.D.N.Y. Jan. 8, 2013) ("[D]iscovery concerning a non-party's assets is permitted if the relationship between the judgment debtor and the non-party is such that the non-party may possess concealed or fraudulently transferred assets of the judgment debtor ....").

    Here, the government served Rule 45 subpoenas upon Ms. Dillon and her husband.[2] *See generally* Fed. R. Civ. P. 45. As with all discovery, a party serving a Rule 45 subpoena bears the initial burden of demonstrating the requested discovery is relevant as defined by Rule 26 of the Federal Rules of Civil Procedure. The person commanded to produce documents may serve a written objection to the subpoena. Fed. R. Civ. P. 45(d)(2)(B). They also may file a motion for a protective order or to quash or modify the subpoena. Fed. R. Civ. P. 45(d)(3) and (e).

---

[2] Rule 45 governs discovery directed at nonparties. Ms. Dillon is a party, so the government could have served a Rule 34 request for production of documents upon her. After all, Rule 69 entitles a judgment creditor to "the full panoply of federal discovery measures" – including a Rule 34 request. *See Magnaleasing, Inc. v. Staten,* 76 F.R.D. 559, 560 n.1 (S.D.N.Y. 1977). But this is a distinction without a difference, given that a person facing a Rule 45 subpoena is subject to the same obligations as a party proceeding under Rule 34. *See generally* Fed. R. Civ. P. 45, Advisory Comm. Notes, 1991 Amend. Sub (a).

**MEMORANDUM DECISION AND ORDER - 5**

## B. Civil Contempt Proceedings

Failure to comply with a subpoena (or an order related to a subpoena) without adequate excuse is a contempt of court. *See* Fed. R. Civ. P. 45(g); *Adv. Comm. Note to 2013 Amendments*. To succeed on its request to hold the Dillons in contempt, the government must show, by clear and convincing evidence, that (1) the Dillons violated a court order; (2) their conduct went beyond the sort of technical violation that would be consistent with substantial compliance; and (3) their violation was "'not based on a good faith and reasonable interpretation'" of the order. *See United States v. DAS Corp.*, 18 F.4th 1032, 1039 (9th Cir. 2021) (citation omitted). Whether contempt is civil or criminal depends on the nature of the character of the relief. *See Parsons v. Ryan*, 949 F.3d 443, 455 (9th Cir. 2020). A "sanction generally is civil if it coerces compliance with a court order or is a remedial sanction meant to compensate the complainant for actual losses." *Id.* "A criminal sanction, in contrast, generally seeks to punish a completed act of disobedience." *Id.* (internal quotation marks omitted). Sanctions for civil contempt range from fines to reimbursement to jailtime.

Contempt proceedings are instituted by filing an application for an order to show cause as to why a contempt citation should not issue. *See generally Forsythe v. Brown*, 281 F.R.D. 577, 587 (D. Nev. 2012). Civil contempt sanctions are non-punitive and avoidable; for that reason the alleged contemnors are not entitled to a

full-blown evidentiary hearing. *See generally United States v. Ayres*, 166 F.3d 991, 995 (9th Cir. 1999). As the Ninth Circuit has explained, "finding a party in civil contempt without a full-blown evidentiary hearing does not deny due process of law to a contemnor." *Id.* That said, the Ninth Circuit does "not encourage the imposition of contempt sanctions 'on the papers'" and has noted that "a district court ordinarily should not impose contempt sanctions solely on the basis of affidavits.'" *Id.; see generally Pennwalt Corp. v. Durand-Wayland, Inc.,* 708 F.2d 492, 495 (9th Cir. 1983) (observing that a civil contempt proceeding is a "trial" within the meaning of Federal Rule of Civil Procedure 53(a) – requiring live testimony).

## ANALYSIS

The Court will grant the government's motion to the extent that it will schedule a show-cause hearing. Although Defendant Cherie Dillon says she and her husband have fully complied with the subpoenas, the government points to facts which cast doubt on that assertion, including the following:

*First,* the Dillons were ordered to produce various documents (including, for example, monthly or quarterly account statements and canceled checks) for ***all*** bank, retirement, or financial accounts of any kind for the period January 1, 2022 to present. Aside from the E*Trade statements mentioned above, the Dillons have not produced other documents. The government says this failing indicates that the

Dillons have disobeyed the Court's order. In particular, the government points out that around August 2022, Ken Dillon paid $1,000 to the government with a check issued from a credit union. Based on that payment, the government understandably infers that Mr. Dillon likely has an account at the credit union – yet he did not produce any account statements related to that account in response to the subpoena. Additionally, the government is aware that Ms. Dillon is receiving social security payments, which are presumably deposited into a financial account of some sort. In response, Ms. Dillon suggests—but does not directly state—that the credit union account is closed and that she is depositing her social security checks into a third party's account. *See Response,* Dkt. 78, at 81 ("The Government does not indicate whether the account used to deposit the social security payments in-fact belongs to Dillon, as the Social Security Administration permits third-party proxy for payment and the use of prepaid debit cards for disbursements.").

*Second,* the government points out that even though the Edward Jones accounts were closed around May 2022, the Dillons did not produce any statements for those accounts between January and May 2022. The government wants to view those account statements to determine if all those funds were indeed transferred to E*Trade. Ms. Dillon has not directly stated that no such statements exist. (She does say she does not possess these statements, but Rule 45 obligates production of documents in the producing party's possession, custody, *or control*.

MEMORANDUM DECISION AND ORDER - 8

*See* Fed. R. Civ. P. 45(a)(1)(iii)). Rather, regarding the retirement accounts, she talks around the issue, saying this: "The Dillon's have done no more than permitted by law when they used their retirement funds at the time of retirement for such purposes. Retirement accounts, such as Edward Jones, are exempt from garnishment, attachment, or levy to satisfy a civil penalty." Dkt. 78, at 3. As the Court explained in its previous order, however, the Dillons are obligated to respond to the subpoenas regardless of whether monies in the Edward Jones accounts might ultimately be determined to be exempt. Additionally, even though Ms. Dillon has argued that "accounts have been closed, lines of credit have been cancelled, and previously available financial resources have been terminated," Dkt. 81, at 2, this does not excuse the Dillons from producing responsive documents.

Under these circumstances, the Court will grant the government's motion to the extent that it will schedule a show-cause hearing. At this hearing, the Dillons shall be required to appear and show cause as to why they should not be held in contempt for failing to comply with the subpoenas. As for the format and nature of the hearing, the Court will expect live testimony. *See generally* Fed. R. Civ. P. 43(a); *see generally United States v. Ayres*, 166 F.3d 991, 995 (9th Cir. 1999) (observing that "a district court ordinarily should not impose contempt sanctions solely on the basis of affidavits.'").

Finally, in deciding the government's motion, the Court has carefully

considered the arguments put forth in Ms. Dillon's post-reply filings, including the following:

(1) A June 28, 2023 document entitled *Reply Motion in Omnibus*, which includes a request that this Court "hold these proceedings in abeyance pending a writ of mandamus in the Ninth Circuit Court of Appeals." Dkt. 84, at 2.

(2) A July 13, 2013 document entitled *Motion: Movant's Reply in Opposition to Government's Inquiry for Rogue Federal Credit Union,* which includes a request for a temporary restraining order. Dkt. 86.

After having considered these arguments, as well as the government's responsive briefing, the Court finds that Ms. Dillon has failed to meet the standard for either form of requested relief. Accordingly, the Court will deny the requests for a stay or for injunctive relief. Rather, the Court will proceed with the show-cause hearing to determine if the Dillons are in contempt of Court. If, after the hearing, the Court finds they are in contempt, the Dillons should be aware that the Court will consider the full range of available sanctions – which may include fines, jailtime, or both.

## ORDER

IT IS ORDERED that:

1. The Government's Motion for Order to Show Cause and Civil Contempt Relief for Failure of Cherie and Kenneth Dillon to Comply with the Court's Order Filed at ECF No. 74 (Dkt. 79) is **GRANTED** to the extent that the Court will schedule a show-cause hearing. That hearing will be

set in a separate order. The parties shall file exhibit lists and witness lists 15 days before the hearing.

2. Defendant Cherie Dillon's motions for a (1) stay of these proceedings pending a writ of mandamus (Dkt. 84) and (2) a temporary restraining order (Dkt. 86) are **DENIED.**

DATED: October 2, 2023

B. Lynn Winmill
U.S. District Court Judge